Whole Foods Mkt. Grp., Inc. v. CBL-Friendly Ctr. CMBS, LLC, 2025 NCBC 72.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV005101-400

WHOLE FOODS MARKET
GROUP, INC.,

        Plaintiff,

v.

CBL-FRIENDLY CENTER
CMBS, LLC, and TRANSFORM
LEASE OPCO LLC,

        Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

1.  **THIS MATTER** is before the Court on Motions to Dismiss filed by both Defendant Transform Lease Opco LLC (Transformco), (ECF No. 15), and Defendant CBL-Friendly Center CMBS, LLC (CBL-Friendly), (ECF No. 16), (collectively, the Motions).

2.  The action arises from a controversy resulting from redevelopment work performed by CBL-Friendly on a building adjacent to a Whole Foods store. Whole Foods Market Group, Inc. (Whole Foods) alleges that during the redevelopment work, asbestos both migrated to its store from the adjacent building and was released within its store, forcing Whole Foods to close the premises for a period of two weeks, remediate the problem, and discard some of its inventory.

3.  The Court, having considered the Motions, the exhibits submitted in support of and in opposition to the Motions, the related briefing, other relevant matters of record, and the arguments of counsel at a hearing on the Motions held 13 August 2025, concludes for the reasons stated below that the Motions should be **DENIED**.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., by Thomas G. Hooper, Brian M. Ballay, M. David Kurtz, and Alexandra B. Rychlak, for Plaintiff Whole Foods Market Group, Inc.*

*Womble Bond Dickinson (US), LLP, by Michael Montecalvo and Zachary Bernstein, for Defendant Transform Lease Opco LLC.*

*Ellis & Winters LLP, by Curtis Shipley and Andrew S. Chamberlin, for Defendant CBL-Friendly Center CMBS, LLC.*

Earp, Judge.

## I.  FACTUAL BACKGROUND

4.  The Court does not make findings of fact when deciding a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  It recites below factual allegations from the complaint that are relevant to a determination of the Motions.  *See, e.g.*, *White v. White*, 296 N.C. 661, 667 (1979) (stating that the purpose of "a motion to dismiss is to test the law of a claim, not the facts which support it" (citations omitted)).

5.  Whole Foods is a Delaware corporation that maintains a registered office in North Carolina, is duly authorized to transact business in North Carolina, and maintains a place of business in Guilford County, North Carolina.  (Compl. ¶ 4, ECF No. 3.)

6.  CBL-Friendly is a Delaware limited liability company with a registered office in North Carolina.  (Compl. ¶ 5.)

7.  Transformco is a Delaware limited liability company with a registered office in North Carolina.  (Compl. ¶ 6.)

8.      On 23 September 1971, Friendly Center, Inc. executed an agreement to lease a portion of the Friendly Shopping Center, a commercial complex located in Greensboro, North Carolina, to Sears Roebuck & Co. (Sears).  (Compl. ¶ 7.)  One of the buildings leased was a two-story structure occupied by a Sears department store (Sears Building).  (Compl. ¶ 8.)

9.      On 27 September 2010, Sears subleased a portion of the first floor of the Sears Building to Whole Foods (Whole Foods Premises) to operate a grocery store. (Compl. ¶¶ 8–10; Decl. of Michael Montecalvo [Montecalvo Decl.], Exhibit A Sublease [Sublease] § 7.1(a)(i), ECF No. 19.1.)

10.     The Sublease states in pertinent part:

> (iii) The [Whole Foods] Premises shall be water-tight, free of Hazardous Materials, free and clear of all prior tenancies, tenants and occupants, and in a good, structurally sound condition . . . which completion shall be evidenced by a written certification by Landlord's architect to [Whole Foods].

> (iv) Landlord shall have removed all asbestos from the [Whole Foods] Premises and shall have provided [Whole Foods] with evidence of the completion of the same in form and substance acceptable to all applicable governing authorities as a condition to issuance to [Whole Foods] of a building permit for [Whole Foods'] Work.

(Sublease § 5.2(a)(iii)–(iv).)

11.     The Sublease also provides:

> If Landlord learns of the existence of Hazardous Material on the Development and same was not caused by [Whole Foods], Landlord shall immediately disclose the nature of such material to [Whole Foods]. Landlord shall make reasonable effort, at its sole cost, to remove or cause to be removed said Hazardous Material if, in [Whole Foods'] judgment, it detrimentally affects [Whole Foods'] business or its employees[,] is disclosed, and Landlord fails to remove such-material with reasonable promptness, [Whole Foods] shall have the right, at its

sole option, to abate rent proportionately to the detrimental effect on [Whole Foods'] business[.]

(Sublease § 17.17(c)(iii).)

12.     Section 17.17(a)(ii) of the Sublease defines "Hazardous Material" to include asbestos.

13.     In addition to Section 17.17(c)(iii), Section 4.3 of the Sublease provides for rent abatement:

> (b)     <u>Interfering Conditions Caused by Landlord.</u>  If the Interfering Condition was caused by Landlord or persons subject to Landlord's control and such Interfering Condition persists for more than forty-eight (48) hours after Tenant gives Landlord notice (notice by telephone shall be sufficient for this purpose) of such Interfering Condition, then in addition to Tenant's other rights under this Lease (including, without limitation, Tenant's right to damages and to exercise its self help remedies under Section 10.4 below), Tenant shall have the right, upon written notice to Landlord, to abate Base Rent in the manner hereinafter provided:
>
> . . .
>
> (B)     If Tenant does not continue operating in the [Whole Foods] Premises while such Interfering Condition persists, Tenant shall have the right to abate Base Rent entirely during the period such Interfering Condition persists.

(Sublease § 4.3(b)(B).)[1]

14.     During occupation, the Sublease allows for "lawful, quiet and peaceful possession and occupation" of the premises.  (Sublease § 13.1(f).)

---

[1] During the period in which Whole Foods' relationship was with Sears, the Sublease was amended multiple times.  However, none of the provisions at issue changed.  (Compl. ¶ 22; Montecalvo Decl., Exhibit C First Amendment to Lease, ECF No. 19.3; Exhibit D Second Amendment to Lease, ECF No. 19.4; Exhibit E Third Amendment to Lease, ECF No. 19.5.)

15.     Section 17.10 provides that the Sublease "shall run with the land and bind and inure to the benefit of Landlord and Tenant and their respective successors and assigns." (Sublease § 17.10.)

16.     On 15 October 2018, Sears filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York (the Bankruptcy Court). (Compl. ¶ 20.) The Bankruptcy Court entered an Order on 8 February 2019 approving an asset purchase agreement in which Transform Holdco LLC[2] purchased various assets of Sears, including its interest in the Sublease. (Compl. ¶ 21; Montecalvo Decl., Exhibit B *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2019) [Bankruptcy Order], ECF No. 19.2.)

17.     On 9 September 2019, Whole Foods and Transform Operating Stores entered into a fourth amendment to the Sublease in which they ratified and confirmed the unamended portions of the Sublease in its entirety. (Compl. ¶ 24; Montecalvo Decl., Exhibit F Fourth Amendment to Lease [Fourth Amendment] § 6(d), ECF No. 19.6.) None of the relevant provisions changed. The parties also agreed that "as of the date of this Amendment, no default by the other exists under the Lease and no notice of default has been given or received by such party." (Fourth Amendment § 6(a).)

18.     The Sears department store closed in spring 2023. Prior to its closing, CBL-Friendly and Transformco began discussions regarding redevelopment of the vacant

---

[2] Whole Foods alleges that Transform Operating Stores, LLC (Transform Operating Stores) acquired the interest to the Sublease from Transform Holdco, LLC, and that, subsequently, the named Defendant, Transformco, acquired the interest. (Compl. ¶¶ 23, 25.)

portion of the Sears Building that was not occupied by Whole Foods (the CBL-Friendly Premises). (Compl. ¶¶ 26–27.) In preparation for the redevelopment, CBL-Friendly recaptured the vacant parcel from Transformco and hired D.H. Griffin Construction Co., LLC (D.H. Griffin) as its contractor. (Compl. ¶¶ 28–29.) D.H. Griffin hired Demolition & Asbestos Removal, Inc. (DARI) to remove the asbestos. (Compl. ¶ 39.)

19. D.H. Griffin and CBL-Friendly agreed to a Scope of Work (SOW) that detailed plans for the demolition and reconstruction of the CBL-Friendly Premises. (Compl. ¶¶ 29–30; Montecalvo Decl., Exhibit H, Operating Agreement, Scope of Work [Scope of Work], ECF No. 19.8.)

20. On 5 April 2023, Whole Foods, CBL-Friendly, and Transformco entered into an Operating Agreement outlining the terms by which CBL-Friendly would redevelop the CBL-Friendly Premises. (Compl. ¶ 31; Montecalvo Decl., Exhibit H Operating Agreement [Operating Agreement], ECF No. 19.8.)

21. Whole Foods alleges that CBL-Friendly and Transformco were aware that Whole Foods was to remain open throughout the redevelopment project. (Compl. ¶ 33.) For this reason, the Operating Agreement imposed restrictions on the redevelopment work, including:

> a. [CBL-Friendly] will at all times act reasonably and with due consideration for the interests of Whole Foods and will cause as little disturbance to the operations of Whole Foods, Whole Foods' customers, and Whole Foods' employees as is reasonably practical including taking all reasonable mitigation measures to reduce noise, dust, debris and vibrations to the Whole Foods Premises[.] (Operating Agreement § 3; Compl. ¶ 34a.)

b. No modifications are to be done to any area of the current Whole Foods tenant space, and all precautions taken to limit any interference with their business operations. (Scope of Work ¶ 1; Compl. ¶ 34b.)

c. All work shall be completed with due diligence and in a manger [sic] consistent with a first-class shopping center or first-class commercial [or] residential property. (Operating Agreement § 14; Compl. ¶ 34c.)

22. In addition, CBL-Friendly committed to perform the following work at its sole cost and expense: "(i) construct a rear exterior wall to ensure that the Whole Foods Premises remains intact, watertight and structurally sound, [and] (ii) separate (including separately metering) all utilities and building systems from the Whole Foods Premises[.]" (Operating Agreement § 3; Compl. ¶ 35a.)

23. Whole Foods alleges that all parties were aware of asbestos-containing material (ACM) in the CBL-Friendly Premises. Accordingly, paragraph 3 of the Scope of Work provides, "[a]batement of ACM in fully demolished structures will be completed prior to demolition." (Compl. ¶ 35b; Scope of Work ¶ 3.)

24. In light of the Operating Agreement, Transformco, as successor in interest to Sears, executed a Fifth Amended Lease Agreement in which Transformco and Whole Foods again ratified and confirmed the relevant provisions of the Sublease. (Compl. ¶¶ 36–37; Montecalvo Decl., Exhibit G Fifth Amendment to Lease [Fifth Amendment] § 25, ECF No. 19.7.)

25. The Fifth Amendment provides that "[t]o Tenant's actual knowledge: (a) no event of default has occurred, and (b) no event has occurred that, with the giving of

notice, the passage of time, or both, could constitute an event of default by Tenant or Landlord[.]"  (Fifth Amendment, Exhibit B at 2.)

26.     Whole Foods alleges that CBL-Friendly was aware of the risk that asbestos could migrate into the Whole Foods Premises during the abatement process, so CBL-Friendly hired an industrial hygienist to place monitors near the demising wall that separated the Whole Foods Premises from the CBL-Friendly Premises.  (Compl. ¶ 40.)  Monitoring began on 25 July 2023.  (Compl. ¶ 41.)

27.     In late August 2023, DARI pressure-washed the construction area near the demising wall.  (Compl. ¶ 42.)  In early September 2023, DARI again pressure-washed the area.  (Compl. ¶ 43.)  On both occasions, water leaked into the Whole Foods Premises.  (Compl. ¶¶ 42–43.)

28.     On 11 September 2023, the asbestos monitors detected asbestos in the Whole Foods Premises for the first time.  (Compl. ¶ 49.)  Whole Foods alleges that asbestos migrated into the store as a result of the water leaks.  (Compl. ¶ 44.)

29.     Whole Foods also alleges that the redevelopment work caused vibrations in its store, jarring loose asbestos that still existed on or near the ceiling at the back of the store close to the demising wall.  (Compl. ¶¶ 45–48.)

30.     Whole Foods alleges that it did not cause asbestos to be in its store, and until these events, it was unaware that Sears had failed to remove all asbestos from the Whole Foods Premises before tendering possession in 2010.  (Compl. ¶¶ 46–47.)

31.     Whole Foods further alleges that CBL-Friendly became aware of the asbestos on 12 September 2023, but that it failed to notify Whole Foods of the problem for another three days.  (Compl. ¶¶ 50–51.)

32.     On 20 September 2023, CBL-Friendly's industrial hygienist recommended that the Whole Foods Premises be closed to remediate the asbestos as soon as possible.  Whole Foods closed its store on 21 September 2023, and it remained closed until 4 October 2023.  (Compl. ¶¶ 52–53.)

33.     Whole Foods alleges that it reported the presence of asbestos to its landlord, Transformco, but Transformco refused to remove it.  (Compl. ¶ 54.)  Consequently, Whole Foods undertook to clean the store itself.  (Compl. ¶ 53.)

34.     In addition to the expense it incurred to remediate the asbestos, Whole Foods alleges that it lost profits and was forced to discard a large amount of perishable inventory.  (Compl. ¶ 55.)  It seeks damages for these losses.

## II.     PROCEDURAL BACKGROUND

35.     Whole Foods filed suit on 5 March 2025 in Guilford County Superior Court, asserting claims for (1) breach of contract against CBL-Friendly; (2) breach of contract against Transformco; and (3) declaratory judgment against Transformco. (*See generally* Compl.)

36.     On 8 April 2025, the case was designated to the Business Court and assigned to the undersigned.  (ECF Nos. 1–2.)

37.     On 28 May 2025, Transformco and CBL-Friendly filed the Motions.  (ECF Nos. 15–16.)  After full briefing, the Court held a hearing on the Motions on 13 August

2025, at which all parties were represented by Counsel. (Not. of Hr'g, ECF No. 41.) The Motions are now ripe for disposition.

### III. LEGAL STANDARD

38. Both Defendants move to dismiss Plaintiff's claims in their entirety pursuant to Rule 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'tests the legal sufficiency of the complaint.' " *Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at *6 (N.C. Super. Ct. May 1, 2024) (quoting *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999)). Dismissal of a claim is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco, PLC*, 371 N.C. 605, 615 (2018) (citations omitted); *see Sutton v. Duke*, 277 N.C. 94, 103 (1970) ("[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.") (citation and emphasis omitted).

39. When deciding a motion to dismiss, the Court views the allegations in the "light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). Nevertheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (citation and internal quotation marks omitted).

40.     The Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

## IV.     ANALYSIS

### A.     Breach of Contract Against CBL-Friendly

41.     CBL-Friendly first argues that Whole Foods does not state a breach of contract claim against it because the complaint does not contain allegations tracing a legal injury to CBL-Friendly.  (CBL-Friendly Center CMBS, LLC's Br. Supp. Mot. Dismiss [CBL-Friendly Br.] 11, ECF No. 17.)  Specifically, CBL-Friendly contends that Whole Foods has alleged that Transformco, as the successor to Sears, was responsible for removing asbestos from the Whole Foods Premises but allegedly failed to do so.  (CBL-Friendly Br. 11.)  Thus, CBL-Friendly concludes that Whole Foods' allegations trace the presence of asbestos to Sears/Transformco, and not to it.  (CBL-Friendly Br. 11.)

42.     Whole Foods responds that CBL-Friendly's argument implicates its standing to sue, not whether it has stated a viable claim.  It maintains that it is required only to allege a legal injury to have standing.  Whole Foods argues that it has more than met this requirement by alleging that CBL-Friendly committed over ten breaches of the Operating Agreement, each of which constitutes a legal injury.  Even if that were not the case, Whole Foods argues, it has alleged actual injury in the form of remediation expenses, lost profits, and lost inventory.  (Mem. L. Opp'n CBL-

Friendly Center CMBS, LLC's Mot. Dismiss [Whole Foods Opp'n Br. CBL-Friendly Mot.] 9–11, ECF No. 36.)

43. To state a valid breach of contract claim, Plaintiff need only allege "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "When these elements are alleged, 'it is error to dismiss a breach of contract claim under Rule 12(b)(6),' and our appellate courts routinely reverse trial court orders that require anything more." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *10 (N.C. Super. Ct. June 19, 2019) (quoting *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004) (collecting cases)).

44. Furthermore, "claims for breach of contract are 'not subject to heightened pleading standards.'" *Id.* (quoting *AYM Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14, at *52 (N.C. Super. Ct. Feb. 9, 2018)). "Rather, they must meet the usual, liberal standard of Rule 8, which requires only a 'short and plain statement of the claim' sufficient to put the court and parties on notice of the events giving rise to the claim." *Id.* (quoting N.C. R. Civ. P. 8(a)(1)). "[A]ll of this means that stating a claim for breach of contract is a relatively low bar." *Id.* at *11.

45. Whole Foods alleges that "migration, disturbance, and displacement of asbestos" caused it to close its store. (Compl. ¶ 53.) To the extent that migration, disturbance, and displacement occurred "as a result of the water leaking from the [CBL-Friendly Premises] into the store[,]" (Compl. ¶ 44), or as a result of vibrations caused by construction activity, (Compl. ¶ 48), Whole Foods adequately pleads that it resulted from CBL-Friendly's breach of the Operating Agreement. Whole Foods

alleges, among other things, that CBL-Friendly failed to complete all abatement of asbestos-containing material prior to demolition, failed to act at all times reasonably and with due consideration to Whole Foods' interests, and failed to act in a way so as to cause as little disturbance to the operations of Whole Foods as was reasonably practical. (Compl. ¶ 62d–f.)

46. As for CBL-Friendly's argument that Whole Foods has not sufficiently pled standing, Whole Foods' allegations that a valid contract existed between the parties and that it was breached by CBL-Friendly are sufficient. *See Soc'y for the Hist. Pres. of the Twenty-Sixth N.C. Troops, Inc. v. City of Asheville,* 385 N.C. 744, 751 (2024) ("Where a party alleges the existence of a valid contract and that such contract has been breached, that party has alleged a legal injury that gives rise to standing."). Moreover, to the extent Whole Foods is required to allege that its legal injury is traceable to CBL-Friendly, it has done so. (Compl. ¶¶ 2, 48, 53.)

47. Relatedly, CBL-Friendly argues that only one injury is alleged, and that Whole Foods' pleading amounts to an assertion of joint and several liability. Citing *Crescent University City Venture, LLC v. AP Atlantic, Inc.*, 2019 NCBC LEXIS 46 (N.C. Super. Ct. Aug. 8, 2019), CBL-Friendly contends that, under North Carolina law, it cannot be jointly and severally liable with Transformco for breaches of separate contracts. (CBL-Friendly Br. 12–13.)

48. Whole Foods responds that it has not alleged that Defendants are jointly and severally liable; consequently, it maintains that CBL-Friendly's argument is nothing but a straw man. (Whole Foods Opp'n Br. CBL-Friendly Mot. 14.) In

addition, Whole Foods distinguishes *Crescent* on the basis that it was decided at the summary judgment stage, not on a Rule 12(b)(6) motion, and contends that it is premature to address CBL-Friendly's argument regarding joint and several liability. (Whole Foods Opp'n Br. CBL-Friendly Mot. 14–15.)

49. The Court agrees that CBL-Friendly's argument that Whole Foods cannot assert joint and several liability with respect to its contract claims is premature and would be more appropriately considered at the summary judgment stage. *See Crescent*, 2019 NCBC LEXIS 46, at *71–72 (determining at the summary judgment stage that the plaintiff "may not hold its subcontractors jointly and severally liable for merely breaching independent contracts" without evidence of concerted action).[3]

50. Focusing next on Whole Foods' allegation that CBL-Friendly breached the Operating Agreement by failing to construct a water-tight wall between the CBL-Friendly Premises and the Whole Foods Premises, CBL-Friendly argues that Whole Foods' claim "reflects a fundamental misreading of the Operating Agreement" because it "conflates two different walls[.]" (CBL-Friendly Br. 17.) CBL-Friendly argues that the demising wall, through which the water leaks occurred, was constructed by Sears years ago in accordance with Exhibit E to the 2010 Sublease. (Sublease, Exhibit E § 1.2(b).) According to CBL-Friendly, Exhibit E makes it clear that waterproofing the demising wall was Whole Foods' responsibility. (CBL-Friendly Br. 18.)

---

[3] The Court also observes that, in *Crescent*, the plaintiff expressly alleged that the defendants were jointly and severally liable for damages resulting from breaches of contract. *Id.* at *67. The same is not true here. In addition, the parties in this case, unlike those in *Crescent*, contracted for an indemnity provision.

51.     According to CBL-Friendly, the wall referenced in the Operating Agreement is a new wall, also referenced in its Scope of Work with D.H. Griffin, and was not required to be built until after the demolition process was completed. (CBL-Friendly Br. 18–19; Scope of Work ¶¶ 11–14.)

52.     Whole Foods responds that there is nothing in the Operating Agreement specifying that the wall it references is the same wall that is described in the Scope of Work cited by CBL-Friendly. Whole Foods contends that, at best, references to the construction of one wall or multiple walls in these documents creates an ambiguity that cannot be resolved at this stage of the litigation. (Whole Foods Opp'n Br. CBL-Friendly Mot. 26.) The Court agrees.

53.     The Scope of Work at issue requires D.H. Griffin to "[i]nstall a CMU and brick veneer masonry wall to repair and close the existing remaining building along column lines 8, J, and 13 where structures are removed." (Scope of Work ¶¶ 11–14.) A reasonable fact finder could conclude, as CBL-Friendly argues, that this work could not be completed until after the demolition was finished.

54.     On the other hand, the Operating Agreement provides that *"[u]pon the occurrence of the Recapture,"* CBL-Friendly was to "construct a rear exterior wall to ensure that the Whole Foods Premises *remains* intact, watertight and structurally sound[.]" (Operating Agreement § 3 (emphasis added).) A reasonable fact finder could conclude that the language of this provision contemplates construction of a wall prior to the demolition process.

55.     Given the words used in the relevant agreements, whether the parties contracted for multiple walls or one and, if one, when that wall was to be built, and who was responsible for ensuring that it was watertight, are questions that cannot be decided at this stage of the litigation. *See LFF IV Timber Holding LLC v. Heartwood Forestland Fund IV LLC*, 2024 NCBC LEXIS 119, at \*23 (N.C. Super. Ct. Sep. 6, 2024) ("It is well settled that a contract interpretation issue cannot be resolved at the Rule 12(b)(6) stage where each party has shown that the provision at issue is reasonably susceptible to materially different interpretations.").

56.     Lastly, CBL-Friendly argues that Whole Foods cannot recover consequential damages because it has not pled that, at the time they agreed to the terms of the Operating Agreement, the parties were aware that "legacy asbestos" remained in the Whole Foods Premises.[4]  To the contrary, CBL-Friendly argues that Whole Foods has affirmatively alleged that it was *unaware* in 2023 that Sears had failed to remove the asbestos before tendering possession of the premises to Whole Foods.  Thus, CBL-Friendly argues, Whole Foods' pleading has foreclosed the possibility that the parties contemplated damage caused by the presence of asbestos at the time of contracting.  (CBL-Friendly Br. 14–16.)

---

[4] CBL-Friendly also contends that Whole Foods' claim fails because its allegation that CBL-Friendly failed to take "reasonable mitigation measures to reduce . . . vibrations" is conclusory and does not sufficiently allege how the measures that CBL-Friendly took were unreasonable or what additional measures it should have undertaken.  (CBL-Friendly Br. 14.)  Given that breach of contract claims are not required to be pled with particularity and because Whole Foods has alleged the existence of a contract and breach of its terms, CBL-Friendly's argument is unavailing.  *See Woolard,* 166 N.C. App. at 134 ("[W]here the complaint alleges [(1) the existence of a valid contract and (2) breach of the terms of that contract], it is error to dismiss a breach of contract claim under Rule 12(b)(6).").

57. Whole Foods responds that it has alleged that CBL-Friendly was aware that (a) demolition would take place in the same building in which Whole Foods was operating a grocery store, and (b) the store was to remain open during the redevelopment work. Consequently, the Operating Agreement imposed restrictions on that work. (Compl. ¶¶ 32–35.) Among other things, those restrictions included CBL-Friendly's agreement to "cause as little disturbance to the operations of Whole Foods . . . as is reasonably practical including taking all reasonable mitigation measures to reduce . . . vibrations to the Whole Foods Premises[.]" (Compl. ¶ 34a.) Similarly, the Scope of Work attached to the Operating Agreement provided that "all precautions [would be] taken to limit any interference with . . . [Whole Foods'] business operations." (Compl. ¶ 34b.)

58. As for the presence of asbestos in the store, Whole Foods argues that it has adequately alleged that, when they agreed to the terms of the Operating Agreement, the parties contemplated the possibility that asbestos could pose a problem. (Whole Foods Opp'n Br. CBL-Friendly Mot. 23.) Otherwise, it argues, there would have been no need for CBL-Friendly to have retained an industrial hygienist to monitor for the presence of asbestos in the store. (Whole Foods Opp'n Br. CBL-Friendly Mot. 23; Compl. ¶¶ 40–41.)

59. Thus, Whole Foods concludes, the parties foresaw that if the redevelopment work was not performed consistent with the terms of the Operating Agreement, the store might have to be closed, resulting in lost profits, lost inventory, and asbestos remediation. It points to its allegation that "CBL-Friendly's breaches . . . directly,

naturally, foreseeably, and proximately caused Whole Foods to sustain damages. These damages included, but are not limited to, lost profits, costs associated with lost inventory, and remediation costs." (Compl. ¶ 63.)

60.    As stated above, Whole Foods has alleged the existence of a contract, the Operating Agreement, between itself and CBL-Friendly. It has also alleged that CBL-Friendly breached the Operating Agreement by:

> a. failing to construct a rear exterior wall to ensure that the Whole Foods Premises remained watertight;
>
> b. failing to separate all work described in Exhibit C to the Operating Agreement, which included work described in the Scope of Work, from the Whole Foods Premises;
>
> c. failing to take all precautions to limit any interference with Whole Foods' business operations in the Demised Premises;
>
> d. failing to complete all abatement of asbestos-containing materials prior to demolition;
>
> e. failing to act at all times reasonably and with due consideration for Whole Foods' interests;
>
> f. failing to act in such a way so as to cause as little disturbance to the operations of Whole Foods, Whole Foods' customers, and Whole Foods' employees as was reasonably practical;
>
> g. failing to take all reasonable mitigation measures to reduce noise, dust, debris, and vibrations to the Whole Foods Premises;
>
> h. failing to perform all construction, renovation, and restoration work in a good and workmanlike manner;
>
> i. failing to complete all work in a manner consistent with a first-class commercial or residential property; and
>
> j. breaching the implied covenant of good faith and fair dealing by otherwise failing to perform contractual obligations in good faith, failing to make reasonable efforts to perform its obligations under the

Operating Agreement, failing to act upon principles of good faith and fair dealing to accomplish the Operating Agreement's purposes, and injuring Whole Foods' right to receive the Operating Agreement's benefits.

(Compl. ¶ 62.)

61. Allegations that the threat of asbestos, regardless of its source, was contemplated by the parties, coupled with an allegation that CBL-Friendly's alleged breach foreseeably and proximately caused Whole Foods to sustain damages in the form of lost profits, costs associated with lost inventory, and asbestos remediation costs, is enough, at this stage, to allow Whole Foods' claim to proceed. *See Brakebush Bros., Inc. v. Certain Underwriters at Lloyd's of London*, 2021 NCBC LEXIS 98, at *41 (N.C. Super. Ct. Nov. 1, 2021) (determining that the Rule 12(b)(6) stage of the litigation was "too early" to determine whether plaintiff would be entitled to recover consequential damages); *see also Poor*, 138 N.C. App. at 26 (to plead breach of contract, a plaintiff need only allege "(1) existence of a valid contract and (2) breach of the terms of that contract").

62. Accordingly, CBL-Friendly's Motion to Dismiss Plaintiff's Breach of Contract claim shall be **DENIED**.

### B. Breach of Contract Against Transformco

63. Transformco argues that Whole Foods is *statutorily* barred from seeking recourse against it because the Bankruptcy Order specifies that it acquired the Sublease from Sears in February 2019 free and clear of any liability, including successor liability. (Mem. Supp. Def. Transform Lease Opco LLC's Mot. Dismiss [Transformco Mem.] 13–15, ECF No. 23; Bankruptcy Order § M.)

64.     Transformco further contends that Whole Foods is *contractually* barred from pursuing it because Whole Foods certified in the Fourth and Fifth Amendments to the Sublease that Transformco was not in default, including for failure to ensure that the Whole Foods' Premises were free from asbestos, thereby expressly waiving its right to sue.  (Transformco Mem. 16–17.)

65.     Whole Foods responds that Section 365(f) of the Bankruptcy Code has specific rules governing the rights and liabilities flowing from assignment of an unexpired lease.  It argues that before such a lease may be assigned to a third-party during bankruptcy, the debtor must assume the obligations of the lease, along with its benefits, and that it passes both obligations and benefits to the third party.  (Mem. L. Opp'n Transform Lease Opco LLC's Mot. Dismiss [Whole Foods Opp'n Br. Transformco Mot.] 8, ECF No. 37.)  Consequently, Whole Foods maintains that Transformco assumed the obligation to, among other things, remove Hazardous Materials and provide Whole Foods with quiet and peaceful possession and occupation pursuant to Sections 17.17(c)(iii) and 13.1(f), respectively.  (Whole Foods Opp'n Br. Transformco Mot. 8.)

66.     In addition, Whole Foods contends that Transformco contractually obligated itself to the relevant terms of the Sublease when, after it acquired the Sublease through bankruptcy and before the redevelopment project began, it agreed in both the Fourth and Fifth Amendments to ratify its terms.  (Whole Foods Opp'n Br. Transformco Mot. 8–9.)

67. The Bankruptcy Code provides that "[a] debtor in bankruptcy may . . . assign its rights and obligations under an executory contract to others[.]" *Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Bros. Fitness, L.L.C.)*, 85 F.4th 321, 325 (5th Cir. 2023) (citing 11 U.S.C. § 365(f)(1)). However, before doing so, the debtor must first assume the agreement in accordance with Section 365. *See id.* And "[w]hen an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens." *In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D.N.C. 2003) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)); *see also Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 849 (4th Cir. 1999) (same).

68. Likewise, assignments of such agreements to third parties are "all-or-nothing." *Anytime Fitness*, 85 F.4th at 326 ("So too with assignments under § 365(f). If the trustee (or debtor) could use the Code to assign a fraction of a contract that could not be assigned outside of bankruptcy, the trustee (or debtor) would arrogate to itself property it did not have before the petition.").

69. The Sublease was an executory contract; consequently, when Transformco assumed the Sublease from Sears in bankruptcy, Section 365(f) specifies that it did so subject to all of its obligations.

70. Even were this not true, in both the Fourth and Fifth Amendments to the Sublease, which followed the Bankruptcy Order, Transformco expressly ratified as its own the obligations of the Sublease, including those in Sections 5.2(a)(iv) and 17.17(c)(iii).

71. "Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Bell Atl. Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 776 (1994) (citation and internal quotation marks omitted). By agreeing to ratify and confirm terms of the Sublease, Transformco contractually accepted responsibility for the obligations at issue.

72. Transformco argues that even though it ratified these obligations, Whole Foods waived its right to pursue a breach of contract claim because it agreed in the Fourth and Fifth Amendments that Transformco was not in default. (Transformco Mem. 16.) Whole Foods responds that it did not waive its right to sue by acknowledging in the amendments that it was *unaware* of any default by Transformco. According to Whole Foods, the earliest date it discovered a default was in September 2023, when it was informed that asbestos had been detected, some six months after the effective date of the Fifth Amendment. Therefore, Whole Foods contends that waiver does not apply because it could not have voluntarily and intentionally relinquished its right to sue. (Whole Foods Opp'n Br. Transformco Mot. 12–15.)

73. Waiver requires "(1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit." *Davenport v. Travelers Indem. Co.*, 283 N.C. 234, 239 (1973) (citation and internal

quotation marks omitted). "Knowledge of the existence of the right, benefit, or advantage on the part of the party claimed to have made the waiver is an essential prerequisite to its relinquishment." *Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co.*, 177 N.C. 103, 107 (1919).

74. At the time it agreed to the Fourth and Fifth Amendments to the Sublease, Whole Foods alleges that it was unaware that Sears had failed to remove the asbestos prior to tendering possession of the premises. (Compl. ¶ 46.) Without knowledge of the defect, waiver cannot occur. *See Salem Realty Co. v. Batson*, 256 N.C. 298, 308 (1962) ("The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance.") (citation and internal quotation marks omitted); *Tisdale v. Elliott*, 13 N.C. App. 598, 601 (1972) ("[A]cceptance with knowledge of a defective performance may be deemed a waiver of the defective performance. But acceptance where the defect is unknown, or latent, does not waive the defective performance.").

75. Next, Transformco argues that Whole Foods' pleading is conclusory because it fails to specify the provisions of the Sublease that were allegedly breached. (Transformco Mem. 19–24.) Further, citing a provision in the Operating Agreement by which *CBL-Friendly* agreed to "indemnify, defend and hold Transformco and Whole Foods harmless from any and all losses [except as may be caused by Transformco or Whole Foods]," Transformco argues that *Whole Foods* contractually agreed that CBL-Friendly, and not it, would be solely liable for any damage resulting from the redevelopment. (Transformco Mem. 17–19.) Transformco also points to the

complaint's allegations that it was CBL-Friendly's agent that dislodged the ACM allegedly still existing within the ceiling of the Whole Foods store, not Transformco: "Thus, to whatever extent Whole Foods asserts a breach of contract claim against Transformco rooted in *CBL's* failure to prevent ACM from leaking into the Whole Foods store and to prevent its work from dislodging ACM in the Whole Foods store, that part of Whole Foods's [claim] must be dismissed." (Transformco Mem. 19.)

76. Whole Foods responds that it is suing Transformco for breaching the Sublease, not the Operating Agreement and, even if that were not true, the indemnity provision binds CBL-Friendly, not Whole Foods. (Whole Foods Opp'n Br. Transformco Mot. 15–16.) The Court agrees. Whole Foods' allegations give Transformco sufficient notice of its alleged breaches of Sections 5.2(a)(iv), 17.17(c)(iii), 13.1(f), and 4.3(b). (Compl. ¶¶ 46, 54–55, 67–69); *see also Vanguard Pai Lung, LLC*, 2019 NCBC LEXIS 39, at \*10 (claims for breach of contract only need to meet the liberal pleading standard of Rule 8). In addition, Transformco's argument against Whole Foods with respect to the indemnity provision binding CBL-Friendly is unavailing.[5]

77. Transformco next argues that Whole Foods has failed to allege facts to support a claim for breach of Section 13.1(f) of the Sublease, which requires it to provide Whole Foods with "lawful, quiet and peaceful possession and occupation of the Demised Premises[.]" It further contends that Whole Foods' allegations that it

---

[5] Transformco has filed a cross-claim against CBL-Friendly for indemnification and for declaratory relief under the Uniform Declaratory Judgment Act, N.C.G.S. § 1-253 *et seq.* requesting a declaratory judgment with respect to this indemnity provision. (Transformco Answer Complaint and Cross-Claim, ECF No. 51.)

reported the presence of asbestos to Transformco and that Transformco failed to remove it are conclusory and not sufficient to allege a breach of Section 17.17(c)(iii) of the Sublease.  (Transformco Mem. 23.)

78.    Whole Foods responds that not only are its allegations of breach sufficient, but it has also adequately alleged that Transformco's refusal to remove the asbestos with "reasonable promptness" forced Whole Foods to close its store for two weeks, amounting to its constructive eviction.  (Whole Foods Opp'n Br. Transformco Mot. 24.)    Whole Foods argues that it has adequately alleged a breach of Section 17.17(c)(iii) because (a) it is not required to plead a breach of contract claim with particularity, and (b) it has alleged that Transformco was informed of the presence of asbestos and refused to remove it, requiring Whole Foods to undertake that task. (Whole Foods Opp'n Br. Transformco Mot. 19–20.)

79.    The complaint describes the circumstances that Whole Foods claims led to the disturbance and migration of ACM into the store.  (Compl. ¶¶ 42–49.)  Whole Foods then alleges that Transformco was notified of the existence of asbestos in the store and, after learning of its existence, failed to make efforts to remove it.  (Compl. ¶¶ 54, 69a.)  Given these allegations, the Court cannot conclude with certainty that there are no facts that could be proved to support Whole Foods' claim.  *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (internal quotation marks and citation omitted).

80.    Similarly, Whole Foods has adequately alleged a claim for constructive eviction resulting from the need to close the store and undertake asbestos

remediation. *See Marina Food Assocs., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 92 (1990) (constructive eviction resulted when "[t]he landlord's breach of the lease rendered the premise unfit for plaintiff's purposes"). Transformco's arguments to the contrary are unconvincing.

81. Finally, Transformco argues that Whole Foods has failed to assert a breach of the implied covenant of good faith and fair dealing. (Transformco Mem. 24.) "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985) (citation omitted). When the breach of contract and implied covenant are based on the same acts, "the fate of an implied covenant claim rises and falls with the fate of the breach of contract claim[.]" *Intersal, Inc. v. Wilson*, 2023 NCBC LEXIS 29, at *68 (N.C. Super. Ct. Feb. 23, 2023).

82. Here, Whole Foods has a viable breach of contract claim, so its breach of the implied covenant of good faith and fair dealing claim does not fail on that basis. In addition, Whole Foods alleges that Transformco "breach[ed] the implied covenant of good faith and fair dealing by otherwise failing to perform its contractual obligations in good faith, failing to make reasonable efforts to perform its obligations under the Sublease, as amended, failing to act upon principles of good faith and fair dealing to accomplish the Sublease's purposes, and injuring Whole Foods' right to receive the Sublease's benefit." (Compl. ¶ 69d.)

83. As this Court has observed, "'[e]vasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance' may constitute breach of the implied covenant." *Intersal, Inc.*, 2023 NCBC LEXIS 29, at *67 (quoting Restatement (Second) of Contracts § 205 cmt. d (1981)). Whole Foods' allegations satisfy the pleading requirements for this claim.

84. Accordingly, Transformco's Motion with respect to Whole Foods' claim for breach of contract shall be **DENIED**.

**C.** **Declaratory Judgment Against Transformco**

85. Whole Foods requests that the Court enter a judgment declaring that (a) it has the right to withhold rent in an amount equal to the rent due for the period of time during which its store was closed to remove the asbestos; and (b) it has the right to withhold rent "proportionately to the detrimental effect on Whole Foods' business of the asbestos that Transformco refused and failed to remove from the Whole Foods Store." (Compl. ¶ 81.)

86. Transformco argues that the Declaratory Judgment Act has no application because Whole Foods has not alleged the existence of an actual controversy regarding the validity or construction of the rent abatement provisions (Sections 4.3(b) and 17.17(c)(iii)) of the Sublease. Instead, according to Transformco, Whole Foods has alleged a dispute that turns solely on issues of fact. (Transformco Mem. 26.)

87. Whole Foods responds that it has alleged an actual controversy because it has pled that it is entitled to rent abatement due to Transformco's failure to remove

the asbestos, while Transformco denies any responsibility for the asbestos under the Sublease. (Whole Foods Opp'n Br. Transformco Mot. 26–27.)

88. The Declaratory Judgment Act (Act) provides that "[a]ny person interested under a . . . written contract . . . or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined *any question of construction or validity arising under the . . . contract . . .* and obtain a declaration of rights, status, or other legal relations thereunder." N.C.G.S. § 1-254 (emphasis added).

89. The Act "is to be liberally construed and administered." N.C.G.S. § 1-264. However, as this Court, quoting the Supreme Court, has observed, "a trial court [may], in the exercise of its discretion . . . decline a request for declaratory relief when (1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding." *PHE, Inc. v. Dolinksy*, 2022 NCBC LEXIS 123, at *19–20 (N.C. Super. Ct. Oct. 19, 2022) (quoting *Augur v. Augur*, 356 N.C. 582, 588–89 (2002)).

90. In this case, the complaint alleges that Whole Foods, as tenant, and Transformco, as landlord, are parties to the Sublease. Whole Foods alleges that the Sublease provides for rent abatement in the event an "Interfering Condition was caused by Landlord or persons subject to Landlord's control and such Interfering Condition persists for more than forty-eight (48) hours after [Whole Foods] gives Landlord notice" that it exists. (Compl. ¶ 17 (quoting Sublease § 4.3(b)).)

91.    In addition, Whole Foods alleges that the Sublease provides for rent abatement in the event the landlord fails to remove Hazardous Material (defined to include asbestos) that detrimentally affects its business with "reasonable promptness." (Compl. ¶ 18 (quoting Sublease § 17.17(c)(iii)).)

92.    Whole Foods alleges that it reported the presence of asbestos in its store and requested that Transformco remove it, but Transformco refused. (Compl. ¶ 54.) Whole Foods further asserts that it was required to close its store and remove the asbestos itself. (Compl. ¶¶ 53, 56.) It seeks a declaratory judgment that it has the right to withhold rent pursuant to Sections 4.3 and 17.17(c)(iii) of the Sublease. (Compl. ¶ 81.)

93.    Although Whole Foods does not allege that a dispute exists regarding the validity or interpretation of the rent abatement provisions themselves, Whole Foods does allege the existence of a more fundamental dispute regarding Transformco's liability under the Sublease. Transformco argues that the dispute turns on factual issues "as to whether Transformco . . . created an interfering condition" and maintains that the continued existence of asbestos in the Whole Foods store was the responsibility of Sears—not Transformco. (Transformco Mem. 26.) Whole Foods disagrees and alleges otherwise.

94.    Accepting the allegations in the complaint as true for purposes of this Motion, and giving consideration to the purpose of the Act, the Court concludes that Whole Foods has sufficiently stated a claim for declaratory judgment. Transformco's arguments are better saved for another day with a more comprehensive record. *See*

*BIOMILQ, Inc. v. Guiliano*, 2023 NCBC LEXIS 24, at \*32 (N.C. Super. Ct. Feb. 10, 2023) ("The question is not whether the plaintiff will prevail on their claim, '[i]t is only whether they have identified an actual, genuine controversy.'" (quoting *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at \*32 (N.C. Super. Ct. Mar. 15, 2019))).

95. Accordingly, Transformco's Motion with respect to Whole Food's claim for declaratory judgment shall be **DENIED**.

## V. CONCLUSION

96. **WHEREFORE**, the Court **ORDERS** as follows:

a. Defendant CBL-Friendly Center CMBS, LLC's Motion to Dismiss is **DENIED**.

b. Defendant Transform Lease Opco LLC's Motion to Dismiss is likewise **DENIED**.

c. Defendant CBL-Friendly Center CMBS, LLC shall file a response to Defendant Transform Lease Opco LLC's Crossclaim, (ECF No. 51), within thirty (30) days.

**SO ORDERED**, this the 17th day of November, 2025.

/s/ Julianna T. Earp
Julianna T. Earp
Special Superior Court Judge
for Complex Business Cases